We'll hear argument first this morning in Case 11-199, Vasquez v. United States. Mr. Brindley. Mr. Chief Justice, and may it please the Court, when determining whether an error affects substantial rights pursuant to the harmless error statute, court should first begin the analysis with the error itself, consider it in the context of the case they have, and then ask the question, can the government prove to the requisite degree of certitude, in this case fair assurance, that the error did not substantially impact the verdict of the jury that heard the case? It is impermissible for the reviewing court to merely ask the question of whether some other jury, a reasonable jury that didn't hear the error that this jury heard, would convict him and determine harmlessness on that basis. My problem is I can accept that formulation, certainly for purposes of this case. I just don't see where in the opinion, I have the opinion of this Court of Appeals, it focused on the wrong test. It didn't use the magic words, and it started out with, let's look at the big picture, and it said, well, here's the defense he elected to put on, and this is a tough sell because. But then it quotes what happened with the jury, and it ends its analysis for saying we, this evidence would have moved the jury to convict Vasquez without a nudge from anything it heard in the government's case. I just don't see that you have supported your theory by what the Court says. Before the harmless error analysis, the question the Court asks is what we have to decide is whether a reasonable jury would convict him absent the error. And so the question that they ask doesn't require any consideration of the error. And the conclusion they reach, that he would be convicted without any consideration of the error, also doesn't consider the error. They do not address the error or its impact at all, despite a robust dissent which set forth the extraordinary prejudicial possible impact of this error. They don't disagree with the dissent. They simply don't address it at all. Sotomayor, could you tell me what the error actually was? I see, and you can add another, three potential things about these calls, or three potential errors. One, that they proved, as a matter of fact, that she was biased. But as the majority points out, she already said she was before the tapes were played. So whatever error may have been occasioned by the jury using the tapes as for the truth, it really was cumulative to an already admitted bias. The second is some sort of ambiguous statement by her that all of them were in trouble, meaning all the defendants, and a similar statement by the Petitioner's lawyer. So what was it that was error that affected or influenced the jury among these three choices? The statements from counsel, two statements, one, that everyone was going to lose the case, which was repeated several times by government counsel during the cross examination. It was never referenced in the summations, however, or in the reply. They were not specific. The recordings were referenced, and they told them to look at the recordings. They didn't reference that specific statement. It was referenced three times in the cross examination. When the witness suggested that who was going to lose the case only referred to her husband, the government corrected her and said, no, it was everyone, and then they played the tape to make that clear. They also played a portion of a recording where it said that counsel was talking to Mr. Vasquez about pleading guilty. Now, if you take those two statements together for their truth, what they mean is that counsel believes he's guilty and was telling him he should plead that way. So that's the error that you think influenced this trial? I think that's the most substantial one. Now, tell me what in this record reflects that influence. The fact that they asked for her testimony, well, she was your client's entire defense, so what does the asking for her testimony show that they were interested in that particular part of the transcript? Well, asking for her testimony shows that they were focused on the – they were asking for a transcript that would have contained that part of the record. We don't – we can't prove, and we don't have the burden, I think that's important to prove, that she – they were focused on that specific statement. However, they did ask for that transcript.  Which transcript? The transcript of her testimony? For testimonies, both on direct – and then they asked for both, plural, indicating they wanted the rebuttal testimony, which would have included these statements. And I don't think there's any way for the government to prove on this record, to any degree of assurance, that they weren't concerned about that error, an error that I think if they took these things for their truth, then they could have thought he essentially confessed to his lawyer, his lawyer knew he was guilty, those are fair inferences if taken for their truth, and then they could have disregarded all arguments that were made on his behalf. That's a sort of error that could infect the entire proceeding.  Alitoson This is correct that the difference between your position and the government's position is that the government says the focus should be on a rational jury, and you say the focus should be on this particular jury. That is one of the important differences. I think that I understand. But beyond that, I really don't understand the difference between the two positions. Well, in the government's brief at Swamp Times, as we indicated in our reply, it seems that they support a very similar test to ours, and at others it seems like they want to say that you can just look at a reasonable jury and how they would view the evidence. Alitoson Well, let me look, let me read you two sentences and tell me whether you think there's a difference between them. First one, is there a fair possibility that this particular evidence caused the jury to convict? Second statement, is there a fair possibility that this jury would have, that this jury would have convicted without the evidence? Do you see a difference between those two? Clement I do. Alitoson What is the difference? Clement The difference is one of them was going to focus on the entire record, which includes the error. The other is going to focus on the evidence in the record without the error, and that's important, particularly with an error like this, an error that could have a pernicious effect that could affect a large, substantial part of this evidence, everything the defendant presented. Roberts Yes. Roberts Stop you there. Where in the government's brief do you see the statement that the analysis should not look to the error, should not include the error? Clement Part of the government's brief asserts that you can look at whether a reasonable jury would convict him absent the error. That assessment doesn't require consideration of the error. Roberts Where exactly is that in their brief, that the issue, the question is whether a jury would convict him without considering the error? Because I look at the government's brief and they have fairly extensive analysis of the error, why they think it's not important, why they, you know, but I don't see them saying you don't look at the error at all. Clement I think there's a significant — I don't have the exact citation. On page 29, Your Honor, it indicates, Although the Court's analysis often has not focused exclusively on the overall strength of the government's proof, its decisions demonstrate that a court's determination of harmlessness can properly rest on the conclusion that the admissible evidence of guilt is sufficiently strong such that the prejudicial effect of erroneously admitted evidence can be deemed not to have altered the outcome. Roberts Yes, exactly. In other words, you look at the prejudicial effect of the erroneously admitted evidence and see if that altered the outcome. Clement If that's the — and there's parts of the — the government's brief, I think, agrees with this in large part on what this test should be. And as far as that goes, I think the problem is the majority below asked a different question, appeared to do a different analysis. Kagan What would you point at in the majority opinion below that suggests that they did an analysis that didn't look at the error and its possible prejudicial effect? Clement Two things. First, the question that they asked. The question that they asked was whether a reasonable jury would convict him absent the error. There's no focus on this jury that heard the case or this verdict. And then — Kennedy Where is that statement? Where is that statement? Clement In the — you mean in the majority opinion? Kennedy Yes. Clement It's immediately prior to the harmless error analysis. If we go to page 16a of the appendix to our cert petition, it states that the majority jury would have reached the same verdict without the challenged evidence. That's the question they're asking. That question doesn't … Kennedy But in the context of the opinion, and this was my first question, they then proceed to analyze, and that's toward the very end of its discussion, what happened in this particular case. And it concludes from this evidence, we believe — this evidence, we believe, would have moved the jury to convict. Clement I think the problem is they ask that question, which I think is the wrong question. Katayakos says you can't ask that question because you can't strip the error from the whole. That's the question they ask. And to answer that question, you don't have to consider the error. Then I think it's important they didn't address the error at all. They didn't address its potential impact. Despite that dissent which laid out, this is one of the most prejudicial errors you could have in a trial. Roberts They say, immediately after the sentence you gave us, they say, looking at the evidence as a whole. They do say that. But then later on in that same paragraph, they indicate that here's what the evidence was. And I think it's important that the only evidence they talk about is the government's evidence. And they talk about it in a way that views the evidence in a light most favorable to the government. In their harmless error analysis, they don't address Mrs. Perez's testimony. And the more important thing is they don't address the error at all. They don't even disagree with the dissent's contention that it's this terribly prejudicial error. Instead, they do what many of the courts below have been doing when they do this guilt-based approach that asks this question. They focus on the government's evidence viewed in light most favorable to the government and then find, well, he could be convicted on that basis by a reasonable reason. Breyer You didn't read the whole thing. It's a little hard to understand. I'm looking at the transcript on page 769. Am I right? I want to get my own understanding right. At that moment, your client's lawyer, who they call Boe, is that right? Clement Yes, that was me, Judge. Breyer That's you. Clement Yes, it was me. Breyer Okay. All right. Your client's lawyer, namely you. Clement Yes. Breyer Has not yet seen the client. Is that right? They think you haven't seen the client yet. They say somewhere you haven't even talked to him yet or he hasn't even talked to Boe. He hasn't seen his lawyer yet. They say that two paragraphs earlier. So is that right, basically, that they think that anyway? You can see at the top of the page, about six lines down, he hasn't even talked to the lawyer yet, he hasn't even talked to Boe. Clement I think that actually what they're talking about was whether Mr. Perez's lawyer had talked to me, Mr. Viles. Breyer Oh, they're talking about the lawyer. All right. And what you're trying to do, as far as I can read this, is they think what you're trying to do is you want Perez to plead guilty. Is that the fair thrust of it? Clement There's some discussion between the two. Breyer What do you think it means? Clement There's some – it's hard for me to tell exactly what they're talking about. Breyer All right. So it's hard to tell what they're talking about. I grant you that. I thought they were talking about trying to – that you thought it would be better if everybody got some kind of agreement worked out. And then she says, Perez's wife, how can I not worry? He says, I don't understand what's going on, which is a fair comment. But it's not the way, Boe. He's putting it two different ways. If he didn't explain to you the way, then either, then it's a different story. If you don't ask him, then she says, yes, he's saying that everybody's going to lose. He's saying that whatever he wants to say, I don't believe him. Well, by the time I got through reading that, I wasn't certain what they were talking about, and I thought it sounded like they were talking about let's all make an agreement or everybody's going to lose. And I could see that you could say that's prejudicial. I could also see that the government could say it isn't prejudicial. And it's pretty hard for me to read their opinion as thinking they were really not thinking about that error. I mean, that was or not an error. I mean, of course they would be thinking about that. That was the issue. And as I read the opinion, they said, well, there's so much other evidence in the case, and in our opinion, this is weak enough that it wouldn't have made a difference and if you didn't say take it for the truth. And the other descending judge, Common, is thinking, no, I don't know. You know, it's pretty hard to understand what it means, but there's an implication there. The lawyer thinks he's guilty of some kind, and in context, that might have made a difference. So he comes to a different conclusion. That's what I saw going on, and I didn't see some big war of standards. I just saw judges disagreeing about a fairly tough question in an individual case. So what can you say to make me change my mind and think this is a war of standards that we ought to? Well, because I think the most important thing is what I've already said, is the question they ask isn't about the air, and they don't address it at all. And when you consider a dissent with that robust of language, the idea that they wouldn't address it at all would be problematic. Okay. So would it satisfy you, in your opinion, if we said, we aren't finding your opinion totally clear, and luckily, people don't have the right to send cases back to us on that basis, but we have the right to send cases back to you on that basis. And therefore, we would like you to clarify whether you do or did or did not take in the actual transcript page there when you reached your conclusion. I don't think that would be sufficient, because I think the important thing here is that they'd be required to ask the right question, to focus on this jury that heard the case. Kagan. I mean, I guess one difficulty, and this is really repeating Justice Alito's question, but it seems that you're parsing things pretty closely. If I ask the question whether an error altered the verdict, it seems to me I'm asking pretty much the same question as whether without that verdict, the — whether without that error, the verdict would be the same. That seems like just two ways of saying the same thing. Now, if what you're saying is, put aside that formulation, there are lots of courts that are doing something wrong, which is that they're not looking at the error and judgment, but then I ask the question, well, is that what this Court did? And I think that the — by asking the question in that way and talking only about a reasonable jury absent the error, when you start saying absent the error and you start looking at the evidence without the error, you're looking at a case the jury didn't hear. And I think that's the biggest problem. If you're looking at a case the jury didn't hear, then the reviewing court sort of makes its own guilt judgment about a case they didn't hear. Well, look, if you win, your client will get a new trial. Let's suppose that the new trial is exactly like the trial that took place. Every single thing is the same except the error is corrected. All right? Isn't that essentially the harmless error analysis? No. I don't think so. No? I don't think so, because I think if you do the analysis that way and you say the error is corrected, you don't take into account its impact. The question has to be whether it contributed to the jury's verdict, not whether the verdict would be the same in another trial. That's where that Sixth Amendment problem that this Court was worried about all the way back in Katiakos, and even in Netter, where this Court said to safeguard the jury's province, we have to do an exacting review of the entire record, including to what that would include the error, obviously, and its impact. And here, this Court didn't address the error or its potential impact, and I think yes. Scalia. Are you saying that it doesn't matter that the verdict would have been the same by this jury if the error had not been made? You're saying that the test is whether it contributed to the verdict, and if it did, it doesn't matter whether the same verdict would have been pronounced absent that evidence? That is correct, Your Honor. Well, then what is harmless error? Every error is harmful. Every error that's there contributes to the verdict. There's no such thing as harmless error. I think — I don't think that should be the formulation of the test. I think it has to have a — what the government has to be able to do is prove to the necessary degree of certitude that the error doesn't substantially impact the verdict. And the reason I— What does that mean? To say that it doesn't substantially impact the verdict means the verdict would have been the same despite this evidence. But you're saying, no, that's not the test. You have to ask whether it contributed to the verdict. The government says, well, it did, but the verdict would have been the same anyway. That's what harmless error is, it seems to me. I think what the — when you ask the question about whether the verdict contributed substantially to — or I'm sorry, whether the error contributed substantially to the verdict, what you're doing is you have to then look at the entire record and you have to look at the error's impact. And when you do that, you can make a determination whether there's anything in the record that will allow the government to prove to the right degree of assurance that it didn't. Now, you could have — it could be the case that you look at all of the evidence and you can say, well, in light of all the other evidence, the error was cumulative or it was essentially uncontested, and then you can find that error is harmless. It couldn't have contributed to the verdict, and we know that to the right degree of certitude. I think the problem comes in when you're talking about this reasonable jury and whether they would convict without the error that some other trial. Sotomayor, we get a little more practical here. I think I understood your basic argument, which is my defense was by this one woman, the wife of one of the co-defendants. She tells a story, and if the jury had believed her story, they would have acquitted your client. Yes. All right? So I am assuming what you're saying, and you can correct me if I'm wrong, which is if we believe that the error committed affected her credibility in a meaningful way, that that deprived you of a defense. Is that what you're saying? Yes. The potential of convincing the jury. Yes, absolutely. In addition to the fact that the error, if those statements are taken for their truth, they serve as an independent basis for conviction, believing that it essentially confessed. Now, assuming that's your argument, I go back to my question, okay? Because what you said to me earlier, it wasn't about believing her or not. It was about believing the defense attorney when he – whether the defense attorney thought the defendant was guilty or not. I think that – I think the two go hand-in-hand. I think that if they take these statements for their truth, they could disbelieve her and the defense attorney who called her because the defense attorney knew he was guilty and then called this witness to say otherwise. I think that would, in that situation, make it appear as if she wasn't telling the truth. And I think the important thing about this whole analysis – Sotomayor, are you taking the position in this case that a reviewing court under no circumstance could conclude that this error was harmless, or are you taking the position in this case that the court here, the Seventh Circuit, I think, committed review error and we should send it back for them to do it the right way? I'm first saying that the court committed review error, but I think – I'm also saying on top of that, if you do the error review properly in this case, as we've the test to be formulated, then what this case is going to come down to is really one question. Ginsburg, you're agreeing with the dissenting judge, who I think did say this error is harmful. Yes, of course. And so you're not saying it's just that they didn't use the right formula, but you would say, given what occurred here, the importance of this witness, that this was a harmful error. Yes, absolutely. I think if you do the test appropriately and do the proper analysis focused on this jury and the potential impact of the error, then this is a harmful error. Exactly. If your argument is something like this, let's assume there are ten pieces of evidence, evidence 1 through 9, this is properly admitted. Evidence item 10 is, A, wrongfully admitted, and, B, so prejudicial that that's all the jury looked at. There's a substantial likelihood of that. I think this is your argument. If the jury was so obsessed, focused, transfixed by item 10, which was improperly admitted, what would happen if we concluded that this jury in this case on these facts, if they had looked at 1 through 9, would have convicted? What result? I think if you did the examination that way and didn't consider 10 at all, what you're saying is it's possible to convict on 1 through 9, but you're not considering the possibility you could convict as an independent basis on 10. And the government would have to do that. We're not only saying it's possible to convict on 1 through 9. That likely probably would have happened. I don't — well, if the error is the error in this case, that's number 10. Then I think when you consider the possible impact, sweeping as it might be, I don't think there's any way on this record that the government can prove with fair assurance that that didn't infect the jury. Kennedy No, my hypothetical is that the court of appeals says that if the jury had looked at 1 through 9, which was properly admitted before them in this trial, they would have convicted. Now, we — then the hypothetical is we don't think they did because this item was so prejudicial that all they looked — that's all they looked at. Is that what your argument is? It seems to me that's stronger than the argument you're making. I'm not sure even that works for you. Clement I — the formulation you've stated, I agree with that. If number 10 is such that there's no way that they can prove that it didn't impact the jury's verdict substantially, and I don't think they can in this case, then, yes, that's a — that's our argument. And the one reason I think it's most important in this case is because this case comes down to, at the end, we have — you know, you have — essentially, it's a circumstantial case. This isn't like Harrington or Schnebel or the cases with direct evidence where this Court has found harmless error. This is a case where the ultimate question is, if you believe Mrs. Perez is credible, he's not guilty. If you don't, he is. And in order to find harmlessness, you have to have a reviewing court on a cold record making that credibility determination, something that this Court has continually said a reviewing court's not in a position to do. And when a case can be ground down to the point where it's going to come to a credibility determination about a witness the reviewing court did not see, and it's not in a position to do that, it's not going to be a good case. Alitoso, I think you're right in saying that the only aspect of the — the only thing that I understand that really differentiates your position from the government with respect to the test is whether the focus is on a rational jury or on this particular case. The focus should be on this particular jury, and when you say the focus should be on this particular jury, aren't you calling for a speculation by the — by an appellate court? How is an appellate court supposed to tell whether this particular jury was different from a hypothetical rational jury? Because this — the reviewing court has to look at everything in the entire record. That includes, in this case, the jury note. It includes, in this case, the split verdict. All of those things. And when you look at all of those things, you can get insight into the jury that heard the case and how they viewed it. You can also look at how a reasonable jury would view the case as a heuristic device to get back to what this jury thought. But — Ginsburg. I thought your main point — yes, you said this jury rather than a hypothetical jury, but I thought your main point is that what's wrong is to say, strip out the infected testimony, take that out. Look at the rest of the record, and if the rest of the record warrants conviction, no harm was done. I thought that what you were saying is the basic mistake is what are they looking to? Are they looking to all of the evidence, or are they just asking the question, let's take out the tainted evidence, see if there's enough to convict? Yes. Yes, Your Honor, I agree with that. The problem is the question asked by the majority strips out the error, and it also focuses on the reasonable jury rather than this jury. And with that, if there aren't any further questions, I would like to reserve the remainder of my time. Thank you, Mr. Brindley. Mr. Yang. Mr. Chief Justice, and may it please the Court. The harmless error inquiry, as this Court explained in Nader and prior decisions, turns ultimately on one question, whether a rational jury, and this is a quote, whether a rational jury would have found the defendant guilty absent the error. Now. Mr. Yang, that does raise the question that I think most separates you and Mr. Brindley, and it's the question that Justice Alito suggested. So let me give you a hypothetical. Let's say that this jury was not out for 8 hours, but was out for 8 days. And on the 7th day, a note came from the jury, and the note said, we really think that these tape recordings are extremely important, but we're having a dispute about how important they are, and we'd like to listen to them again. And they do that, and then they come back with this compromised verdict. Now, what you're suggesting is that we cannot look at any of that. Essentially, the best proof that's available to us about whether the error, in fact, affected this jury's decision, you would have a court close its eyes to. And I guess, why would that be? Yang, I don't believe our view is quite so firm. I think as a general matter, our view is that indications mid-deliberation of what a jury might, or some subset of the jury might be considering, is generally very unreliable, and that in your case, the court shouldn't shut its eyes to that question. But what it should do is redirect the court back to the evidence that was before the jury. Because if we're assuming a rational jury, there often is some correspondence. It should be an indication to go back and look again. If the court were to conclude, wow, the evidence was so overwhelming, so overwhelming that no rational jury would have, you know, had a problem with convicting absentee error, it's very unlikely that the situation that your hypothetical poses would result. So let me make sure I understand what you're saying to me. You're saying to me, no, we didn't mean to say that that was irrelevant. We just mean to say that an appellate court should be cautious about it and look at that kind of evidence in the — in light of everything else that happened at the trial. Well, ultimately, the appellate court should look back at what the jury was supposed to consider, the evidence in light of the instructions. It should be a cautionary note, but ultimately should redirect the court back to the evidence. And I think that focuses on, again, one of the two related legal points that Petitioner made in argument that I think there's real disagreement between the government and Petitioner on. One, the inquiry of a reasonable jury or a rational jury, which is the government's view, versus this particular jury. And the related claim that the inquiry is how this influenced the deliberative process, if it was like a factor that this jury might have considered in reaching its verdict. Sotomayor, I don't know how to separate out an admitted error situation, and let me explain why, okay? Let's assume the facts of this case, but instead of this tape recording, the improperly admitted evidence was a confession by the defendant. Would you be prepared to say that in a circumstantial case of guilt — now, we've already said that confessions are one of the most powerful pieces of harmful error that in this — in a confession that somehow this was still harmful, harmless? Are we taking Marina's testimony out now? Yes. Yes. Okay. If Marina's testimony was not in and you had the evidence here, now, an unconstitutional confession, of course, pervades the bar, right? That's a different standard. Let's talk about it under the Quixota standard. Let's talk about the standard where we're — If all you're asking is a fair assurance, then I think you could get to the same result here, because what you — when you take Marina's testimony out of the picture, there was really no defense at all. What the government had was a strong case. Sotomayor, No, no, no. He testifies, but he testifies to everything Marina said, meaning he — when I use the word confession, I'm sorry, I misspoke — he takes the stand, he — or doesn't take the stand, he says everything he said to the police. And that confession that he was there and said — So he testified to the substance of Marina's testimony, that he happened to just drive — He called them — Right. And then the error is the same error? It was improperly admitted. Without Miranda — The tapes? Uh-huh. Not the tapes, just the story. I'm a little confused, because he's testifying in court. The government is not putting him on — he's going on as — there's no Miranda question or anything. My hypothetical is not working for this reason, and I understand what you're saying. It's hard to identify a comparable mistake. But my point is that doesn't the harmfulness of the error sort of vary with the strength of the government's case? Undoubtedly. I think that's right. Now, let's — And the tapes were admitted. We would have a weaker case. And it would be — ultimately, these lines that the Court has draw between a fair assurance or a harmlessness beyond a reasonable doubt are guides to reasoned judgment by the court of appeals. The Court has repeatedly recognized that this is a review in court, judgment based on the record. Exactly. And what the defense said was there's only one defense here, and it's the wife's defense that he was there by accident, not intentionally. There was a lot of countervailing evidence to disprove that. But the question is, could a reasonable jury have — might have or could have credited that defense? Well, I'm not sure that that's the Petitioner's view. I mean, I would — there's two aspects to this case. We can talk about the fact-bound ins and outs of that, which is interesting in its own right. But I think one of the key legal questions for the Court is what's the standard that the Court must apply. And there's a real difference between Petitioners and the government here. And that standard that Petitioner has advocated is that this jury, as opposed to the reasonable jury, and that looking at this jury, you must look at the thought process of this jury to decide whether the error might have had some influence. Sotomayor, you look at how the case was tried. Well, no, but I think the position about this jury versus a rational jury and looking at the deliberative process is entirely foreclosed by this Court's decision. But, Mr. Yang, you can't do that. Kagan, it wasn't, Mr. Yang, because I think that the reason why this jury versus a reasonable jury is important is whether you're going to take into account what you know about what this jury did, how long it stayed out, what notes it wrote to the court, what eventual verdict it reached. And you just suggested to me that that was fair game to consider in this analysis, although one should be cautious about doing it. Yang, I should qualify that. I didn't intend to give the Court the misconception that we're looking at this jury. The ultimate question is whether a rational jury would have convicted after the error. Kagan, a rational jury is not the jury that I said stayed out for 8 days and sent  That's this jury. And the reason that I believe that the Court can use that as a benchmark to look back at the evidence is it is some indication of perhaps what the evidence should be saying to a rational jury. But the ultimate question is the rational jury. And let me give you a few examples from the Court's case law, because I think this really puts it beyond dispute that the real question is the question of a rational jury, what they would do absent the error. First, in Nader, the Court explained that erroneous admissions of evidence or exclusions of evidence, just like an erroneous instruction on an element of the offense or failure to instruct on a necessary element of offense, as was the case in Nader, will infringe on the jury's fact-finding rule and will affect the deliberative process in ways that are not readily calculable. The error in Nader was that the jury was instructed not to consider the question of materiality, which was an essential element of the defense. And the Court specifically rejected that the fact that this jury didn't actually make a finding based on the evidence was not, did not foreclose harmless error. Ginsburg-Coper, you're going back, then, to your position in your brief where you said that you would not include in the harmless error calculus that the jury requested to hear Marita's testimony again, the length of their deliberations, the divided verdict. You said in your brief at pages 32 to 35 that you would not include those. That's right. Those types of indications are entirely unreliable. But I thought you answered Justice Kagan that you could take them into account, the Court could take them into account, but cautiously, not give them undue weight. What I think the Court should do is when you have a, what is a much better indication, or at least a, of what this jury might have been doing, you use that as a reason to go back and look again at the evidence. But also, I suspect Suppose you have a case in which, after the verdict of guilty, there's a motion for a new trial, and it's being heard by the trial judge, and the trial judge said, I now acknowledge that this Court committed error in introducing item 10 in evidence. And the Court remembers that when this came into evidence, the courtroom was quiet. The jury was transfixed. Jurors were weeping. This was the high point of the trial. That's wrong for the judge to say. All he has to say is, well, I have to ask whether items 9, 1 through 9, would have been in some other jury, a rational jury, so that's the end of it. Judges do what I suggested all the time. Well, we think that, again, the inquiry that needs to be focused on is what a rational jury would do. And let me give you an example. Kagan That's starting to look, Mr. Yang, very much like a directed verdict for the government on the part of a judge, because you're so abstracting it from this case and this jury, and what this jury's reactions to everything that happened was, that, you know, why not just go to the directed verdict? Yang This Court has repeatedly rejected that. The reason it's not a directed verdict is you have a jury verdict. You have a jury verdict that, beyond a reasonable doubt, that the jury has factually determined that this defendant is guilty of the offense charged on proper instructions, then the question is, what remedy do you have? Kagan You do have a jury verdict, but you are giving us a formulation of the test that essentially pretends that the jury is not there and that we know nothing about how the jury reacted and what reacted to various things. Yang The reason the Court's rationale here and shows that our view has to be the right view, for instance, in a series of cases, this Court has concluded that the unconstitutional admission of a confession, either of the defendant or the co-defendant, can be harmless when there is overwhelming evidence such that a rational jury would convict without the evidence. Now, if we're looking at what a jury would have considered, whether they were brought to tears or whatever, when you're talking about a confession, there's no doubt that a rational jury or any jury is going to have that in the forefront of their minds when they are deciding guilt or innocence. Sotomayor Counsel, I just don't see how you can do it without the error. I keep going back to this point. How about if the prosecutor had done in summation the following? Ladies and gentlemen, whatever the wife told you, disbelieve, because the lawyer said he was guilty. Yang I'm sorry. I just don't. Sotomayor The lawyer, the prosecutor got up at the end of trial and said, disbelieve everything the wife told you, because the lawyer said the defendant was guilty. All right? I'll go through all the other evidence I have that might prove that she was not telling the truth, but the central most important piece of evidence in this case about his guilt is that the lawyer said he's guilty. Can you say that this jury was uninfluenced by that error?  No. Sotomayor Because under your formulation, a rational jury would have convicted absent the lawyer saying. Yang That's right, but this Court has repeatedly said, for instance, in Rose, where the question was the jury was told to presume certain malice in a homicide. The fact that the error may have altered the basis on which the jury decided the case is not the question. You look to the reasonable juror. Similarly, in Pope, the Court says the question does not turn on whether the jury did not, in fact, have this error in mind when it found the defendant guilty beyond a reasonable doubt. Ginsburg You would take into account that the prosecution apparently thought this was important, so important, the trial was over. The prosecutor said, Judge, I'd like to come back so these tapes can be introduced. We have the witness testifying that the defendant is there by chance. He was not part of the scheme. We have no direct evidence, because Cruz never spoke to this defendant, DeVasquez. He's at the scene. We know that. And an explanation, an innocent explanation, given why he's at the scene. And then the government comes back after everything is done and says, we want the jury, we want these tapes to be before the jury. Isn't that — don't we take into account that the government itself thought this was very important? I think it's a factor that you consider, again, in directing the Court's look at really what the trial evidence was. I mean, it — it, I think, belies the facts of this case. Obviously, that's a hypothetical. But when you look at how cases really develop, prosecutors don't focus on a fleeting, you know, sentence in a series of long tapes that weren't transcribed. Ginsburg. But my point to you is it wasn't fleeting. The government says, we want to extend the trial so that we can play these tapes, all of them. And they contain not just the one statement. There's the one statement about the trial will be bad, a trial will be bad for all of them, and they all — that they should take a black tape. I think when you look at what happened at trial, you see that the tapes were played for two reasons. One, to show that Marina had bias, because she was told by Petitioner's counsel, the Petitioner's counsel, because she thought this, Petitioner's counsel would be able to make motions and arguments on behalf of her husband at sentencing. Sotomayor, The dissent pointed out that she admitted that before the tapes were played. Correct. That she was testifying in the hopes of getting a lesser sentence for her husband. So she — the tapes weren't necessary for that. Well, the tapes certainly were reinforcing of that. And in fact, when the government's closing argument, it did not reference anything about this, what I think you and Justice Breyer correctly identified as a very ambiguous sentence in a series of long tapes. And remember, these transcripts that are in the record are only one portion of the tapes. What was the line that the prosecutor repeated three times while she was on the stand, the exact line? The exact lines? Yes. The government thought it was important for the jury to hear it, because it was three times. Well, to be fair, I think you need to look at what's before and after it. The government's focusing on three different statements that are at issue in the tapes. The first one is that, with some profanity, suggesting that her husband is not likely to succeed at trial. The second one is that defense counsel suggested that she said that defense counsel suggested that everybody was going to lose. And then third, she thought everybody was in, again with profanity, I'm going to paraphrase, a bad situation. Scalia, why does any of this have to do with her credibility? Did the dissent say that the way this affected the jury was that it rendered her less credible? I thought the dissent just said it's bad to tell the jury that even the defendant thought he was guilty, or even the defendant's lawyer thought he was going to lose. So the reason that this was in, and I don't think it's not contested here, is because the argument was made that these statements equating Petitioner and Perez in terms of their level of guilt or their likelihood of being convicted is inconsistent with Marina's subsequent testimony that all of us, you know, Vasquez just or Petitioner just showed up unknowingly because she asked him. That was a theory that's not contested. And, in fact, nothing that the jury heard in this case under Petitioner's theory would be different. The only difference would be a limiting instruction that would simply say you can't take these statements for the truth of the matter. So nothing that the jury heard would have been different. When you read the short passage in the context of these tapes, and the tapes, again, are not fully transcribed. Petitioner asked for the entire tapes to come in. At the tail end of the trial, which was based on the government's showing that was there, he waited with Perez and Cruz while the informant was coming back. He was there when the call was made to the informant that said they had the money. Now, there's some dispute of whether he said that, but certainly he was there when that call was made, because that's what triggered the raid. All of that was basically undisputed. You've got all these calls that tie Petitioner to Perez, to Perez, 27 calls. Roberts, you're going over the evidence, and I may simply be asking the same question that Justice Kennedy asked earlier. But let's say you have a situation where it's the same thing, and at the, you know, in the improperly admitted evidence is the defendant saying, I'm guilty, I'm guilty. And the evidence is the same as all you've set forth, pages 2 through 9. You've got very complicated, who's driving what, you know, kind of car, where and where they're meeting. And the jury goes out and comes back in two minutes, you know, the guy said he was guilty. Is that a situation in which we're supposed to then go back, look at all the complicated evidence and see if a jury would have convicted? Or can we with a fair degree of confidence say that the error is what led the jury to convict? Well, I think the former, but let me explain. And again, I'm going to go back to Nader, if I may, for a second. In Nader, the jury never found an element of the offense, never did. There's no question that the jury's verdict was affected by the failure to instruct. In fact, it was not just a failure to instruct. The district court toward the jury, this is not for them to consider. And so to the court's view in that case was that the defendant could not have contested that element. Well, but if we're, again, if we're focusing on the legal dispute between us and the other side about whether we're looking at this jury or what a rational jury would do when you excise. Breyer. I would like very much to know what your answer is to Justice Kennedy's hypothetical and the Chief Justice's. As I understand those hypotheticals, they're trying to imagine a case where the particular piece of improperly admitted evidence, we know from how the jury reacted or the kind of evidence, it's the kind of thing that could really make a difference. I mean, they were in tears, et cetera. Now, in my reading of this, which I once had to read about a hundred harmless error cases, and it seemed to me, and you can confirm or deny this, that in cases like that, the judge who knows this is a tough case when the jury is feeling this way, asks himself or herself the question, could this illegally admitted evidence make a difference? Could it have made a difference in this case? Could it have? And the answer is going to be no, where that judge thinks a reasonable jury would not have thought it made a critical difference. That's just putting the same thing, I think, slightly differently. But the answer in Justice Kennedy's case would be a judge just isn't going to think it has nothing to do with rationality. If the jury is in tears, they're going to think it's a close case. And therefore, if in fact this could have made a difference, the judge says, yes, it's not harmless. And if the judge thinks, no, it couldn't have made a difference to any rational person, he's going to say, hmm, harmless, period. Now, that was my impression reading those cases, and I felt that those hypotheticals were getting at that, and use them, answer them rather than me, because that's what I'm interested in. Yang. Yang. The answer is that in a case where the jury, where you have some very provocative evidence, but there's also a very strong case that exists, it may depend on the level of certainty that you need to get to, whether it's a fair assurance or harmless beyond reasonable doubt. But even in those cases, you can — if the court looks at the evidence as a whole and says that there was so much evidence before this stuff came in, this bad, this error came in, that a rational jury would have gotten to the same result, that it would have convicted. Kennedy. Suppose the judge concludes that both this jury that I had and some hypothetical rational jury would have been so focused on this evidence that that's all they would have looked at. But if they had looked at 1 through 9, the admissible evidence, they would still have found guilt. Is that what you're — is that a proper application of the framework? I think so, but it's not, again, what a — what this particular jury was doing. Because we know, for instance, for Nader or in the confession cases, the jury hears a confession, an unconstitutionally obtained confession, unconstitutionally admitted from the defendant, that is going to be right there. You know, a jury — a juror could say, let's go home. We have a confession. It's out of his own mouth. There's very little else to debate. But when the evidence is beyond that confession, so overwhelming, that no rational jury would have gotten to a different result, and you could say that with a fair assurance or if there's a constitutional error as it would be with a confession beyond a reasonable doubt, the Court says that this is harmless. And the reason that the Court's taking that inquiry is because it — the Court's long recognized that no trial is perfect, that there are very significant costs  And so the harmless jury — But you are essentially saying, as I understand you, that if there was such a thing as a directed verdict in a criminal case, if the judge would say, yes, I would direct a verdict here because there's only one way a rational jury could come out. Yang, that argument was specifically rejected by this Court in Nader. The same question came up, and, in fact, Nader is a much more difficult case for the government than this, because at least in Nader, the defendant had the argument that this jury did not find guilt beyond reasonable doubt because it was never instructed to find an element of doubt. Alito, Mr. Yang, I think you may be taking a harder position than you really need to. Why shouldn't the rule be that the appellate court should look at what would be done by a rational jury, except in the kind of extraordinary circumstances that have been posited by Justice Kagan's hypothetical and a few of the other questions, simply because it's so difficult to determine what a — what the jury was actually doing? We have a rule that prohibits consideration of what goes on in the jury room. But suppose we didn't have that. Suppose that it was all videotaped and the jury didn't know what was going on. So you could watch it and see. If that were the case, then surely the rule would be, what would this jury have done? But most of the time, it's just speculation to tell what a jury — did they come back quickly? Well, that shows that this evidence was so bad that it caused them to render a quick verdict in what otherwise would have been a difficult case. Did they take a long time watch as it was a close case? And therefore, any error might have tipped them one way or the other. You just can't tell. I'm — I don't want to resist this too much, because I think we're fighting about things at the very extreme. Most of the times that we're talking about these purported indications from the jury, it's entirely ambiguous. And so there may well be extreme examples. And I think those would rightfully influence a court's consideration of the case. But again, when you have harmless error cases in which we know for a certainty, as in Nader, that the jury did not find an element of the offense, the inquiry has to be — it has to be on what the Court has repeatedly said in — this is, I believe, on pages 19 of our brief — that the focus of the harmless error inquiry is bringing the Court's attention to the fact that the primary purpose of a trial is the factual question of guilt or innocence. And you would be — Roberts' Counsel, when you began, if I'm remembering correctly, you said there were two ways in which your position was different from Mr. Brindley's. Brindley. One, I understand, is that you look at a rational jury and not the particular jury. What's the second? Well, it's related. His focus on the particular — this jury, I believe, is seeing whether there is some influence on the process, the deliberative process, even if the outcome would have been the same absent the error. And so he's kind of trying to get into the minds of the jury. And this Court has repeatedly rejected that. Again — Kagan, can I ask you a different question, Mr. Yan, which is, you know, there's difference in the formulation of the test, which I find it hard to wrap my mind around, but — and it strikes me that it's two different ways of saying the same thing. But I'm told that there's a fair bit of scholarship out there which suggests that courts that use one formulation tend to come out one way and courts that use the other formulation tend to come out the other way. And I'm just wondering what your view of that is, that somehow one formulation seems to put the emphasis on the entire case, whereas the other formulation seems to put the emphasis on only the government's evidence, and that that makes a difference in the end. We don't think that there is this deep — there are some disagreements or some things that we disagree with about what courts' appeals do in any particular cases. But with respect to this formulation of the — I think Petitioner calls it the guilt-focused versus effect of the error-focused approaches, the scholarship, I think he relies principally on Judge Edwards' opinion about harmless error. That came out in 1995 when it was already swimming upstream against this Court's recommendations. But he had in his pocket the Sullivan decision, which was admittedly a structural error case, but there was language in Sullivan which suggested that you need to look at what this particular jury was going to do. Then we have Nader and Resen — I can't pronounce this very well, but Resenquo. It's the — the Apprendi application of Nader, which specifically reject this kind of broad logic in Sullivan as being inconsistent with the Court's harmless error  Now — Ginsburg. You do agree that the government has the burden of showing that the error is harmless. Yes. It's the government's burden. And you also agree that we should look at the evidence in the light most favorable to the defendant in making — No. The Court, even in — in, I think, most recently, the Court explained in Shinseki talking about Kodiakos, that you don't use these kind of presumptions or rigid rules. And the reason that you do, that you're kind of looking from the perspective of a reasonable jury, is the jury has in fact found the defendant guilty beyond a reasonable doubt. And then the question is, are you setting aside that verdict? Because do you think that this error was the thing that tipped the scales from not guilty to guilty? And so taking a look at the evidence kind of with all presumptions favoring one side of the other is not how this Court has conducted it. So what does it mean that the government has the burden? What does the government have to do? The government has to show, as this is the formulation in Nader and which the Court has said in Nader is the same thing that applied in erroneous admissions or exclusions of evidence, that a rational jury would have found the defendant guilty absent error. And that involves the three core elements that we explained in our brief. And then the Court takes into account. Ginsburg. The absent error, so that means you look at just the evidence that's not tainted. In some cases you can do that, where the evidence is so overwhelming. If I may finish. Briefly. Briefly. In some cases you might do that. In other cases where it's close to the evidence, it's not so strong, you need to look at the error to see if that error was going to be the dispositive thing in getting to guilt. Kennedy. Kennedy. Can I just allow me to ask one question? Could I amend your statement so that you would say a rational jury in all the circumstances of this case, given what this jury heard, would have? Yes. It's in the position of this jury based on the evidence presented to the jury. Correct. Thank you, counsel. Mr. Brindley, you have 4 minutes remaining. I first want to address Netter, which the government counsel continually referenced. Netter talks about the reasonable jury, but Netter also limits itself to situations where the evidence is uncontroverted and incontrovertible. I think because in those situations the difference between the reasonable jury and this jury would be deemed to be nonexistent because it would be impossible for the error to have an impact. Secondly, I think it's important to note from Justice Sotomayor's hypothetical if you don't consider the error, then even that extreme case, that would have to be ignored. And so I think the government's formulation and the formulation used by the appellate court below would justify, would lead to that bad conclusion. I also think that when you do that formulation, we're talking about the reasonable jury and absence of error, the reason those cases come out different is because those courts think they don't have to address the error, which is I think what happened in the majority below, why they didn't address it despite the dissent. The other thing I think it's important to note is the reason you have to look at the error and its possible impact, and not just whether you could be convicted on the other evidence, is because you say, well, he could be convicted on the other evidence. If that's all that you're saying and it's not on the evidence, which could independently in this case be a reason to convict, then I think you're making that guilt determination that this Court says is not supposed to happen. And I think the majority's opinion below is consistent with that approach, and there's nothing in it to suggest that's not exactly what they did. I also think that in the end, there was a mention of a limiting instruction. A limiting instruction would have cured this problem. We assume juries would follow it. That means they wouldn't have concluded that his lawyer thought him guilty and then put Mrs. Perez on the stand and concluded she wasn't telling the truth. What this error allows, what if taken for its truth, a jury could believe that he's guilty and he confessed to his lawyer, they could disregard everything that was said on his behalf, they could say, we know that he's guilty, his lawyer knew he was guilty, we can convict him on that basis. That's an error that can infect the entirety of the proceedings. And if you look at this jury and what they heard, and the question comes down to whether Mrs. Perez is credible or not, there's nothing in this record the government can point to that would allow a reviewing court to make that determination, a reviewing court that didn't see. Alito, did the panel majority in this case say anything that differs from what this Court has said about harmless error? If we were to reverse, what would we point to in the panel majority's opinion that was erroneous? I think you would point to that first statement of the test where they say whether the reasonable jury would convict him absent the error, because Katiakos says you can't strip the error out. This Court's never overruled Katiakos. The other thing is that this Court said exactly what the Southern Circuit said there in other cases. The Court has used, I think, dicta that has language of that sort, but in those cases what the Court does, like in Harrington, they look at what the error was, they put it in the context of the whole case, and they say the government could prove the jury didn't look at this to the right degree of assurance because it was cumulative, because there's no one other thing. You want us to say we're reversing you, Seventh Circuit panel, because you said what we have said in prior cases, but we were wrong. I think the reason to reverse them is because that formulation has proven to lead to the wrong analysis in all of these lower courts, this guilt-based approach. And it is not the law of Katiakos. This Court's never overruled Katiakos. And to focus on it allows a guilt determination by a reviewing court that would be violent of the Sixth Amendment that this Court was concerned about in Katiakos, that this Court was concerned about in Sullivan, that this Court was even concerned about in Netter, outside the scope of cases where the evidence is uncontestable. Because if you took these statements as true, and then you came down to a question, well, is Marina credible or not, Mrs. Perez, there's nothing the government can do on this record to prove that the jury would have found her credibility differently, because this Court can't figure that out on a cold record. It's said so many times. It's not possible to do, especially in a case that's based on circumstantial evidence like this one. Thank you, counsel. Case is submitted.